UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTOINNE D. THOMAS,

        Plaintiff,

                                                Case Number 13-12283

v.                                           Honorable David M. Lawson

1156729 ONTARIO INC. a/k/a CB DELIVERIES
and DANNY MYSLIK,

        Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR A QUALIFIED PROTECTIVE ORDER

Before the Court is a motion by the defendants for a qualified protective order to permit them to obtain the plaintiff's medical records and conduct *ex parte* interviews of his treating medical providers. The plaintiff objects to the request for *ex parte* interviews on the ground that formal discovery procedures — that is, depositions — are available to permit the defendants to gather the information they need and are better suited to protect the plaintiff's privacy rights. The issues raised by the motion have arisen in other personal injury cases in this district, in which the Court has addressed both Congress's mandate that a person's medical information be kept confidential under the Health Insurance Portability and Accountability Act (HIPAA), 42 U.S.C. § 1320d, *et seq.*, and the defendants' interests in access to medical witnesses that may have information that is necessary to defend the lawsuit.

### *Background*

This is a personal injury case arising from an automobile accident in Detroit. Plaintiff Antoinne Thomas alleges that defendant Danny Myslik negligently injured him while driving a semi-truck for his employer, 1156729 Ontario Inc. Thomas alleges that he suffered a traumatic brain

injury and injuries to his neck and back.  The plaintiff alleges that the defendants are citizens of

Canada and he has invoked the Court's alienage jurisdiction under the diversity statute.  *See* 28

U.S.C. § 1332(a)(2).  The claim is based on Michigan's no-fault insurance act.  *See* Mich. Comp.

Laws § 500.3135.

***Medical privilege under state law***

Michigan law recognizes a privilege that requires a physician to refrain from "disclos[ing]

any information that the person has acquired in attending a patient in a professional character, if the

information was necessary to enable the person to prescribe for the patient as a physician . . . ."

Mich. Comp. Laws § 600.2157.  That privilege applies in this case because for the plaintiff's claim,

"state law supplies the rule of decision."  Fed. R. Evid.  501.  That privilege, however, is waived if

"the patient brings an action against any defendant to recover for any personal injuries, . . . and the

patient produces a physician as a witness in the patient's own behalf who has treated the patient for

the injury . . . ."  Mich. Comp. Laws § 600.2157.  The waiver extends to "physician[s] who ha[ve]

treated the patient for the injuries, disease, or condition."  *Ibid.*; *see also Domako v. Rowe*, 438

Mich. 347, 353, 475 N.W.2d 30, 32 (1991).

Michigan courts have held that defense counsel may conduct *ex parte* interviews with a

plaintiff's treating physician under state discovery rules after the plaintiff has waived the physician-

patient privilege, either by failing to assert it timely or by filing a lawsuit and alleging personal

injuries.  *Domako*, 438 Mich. at 362, 475 N.W.2d at 36; *see also Holman v. Rasak*, 486 Mich. 429,

437, 785 N.W.2d 98, 102 (2010).  But those cases do not settle the question here; the overarching

authority governing a patient's right to privacy of his or her medical records is HIPAA, a federal

statute.

-2-

### Privacy of medical information under federal law

HIPAA ensures the security and privacy of health information. *Wade v. Vabnick-Wener*, 922 F. Supp. 2d 679, 687 (W.D. Tenn. 2010). The enactment of HIPAA ushered in a "strong federal policy in favor of protecting the privacy of patient medical records." *Law v. Zuckerman*, 307 F. Supp. 2d 705, 711 (D. Md. 2004). The regulations restrict the ability of health care providers to disclose a patient's medical information without the patient's consent. *Id.* at 710-711.

HIPAA contains an express provision preempting state law that is "contrary to" its requirements. 42 U.S.C. § 1320d–7(a)(1); *see also* 45 C.F.R. § 160.203. State law is contrary to HIPAA if (1) it is impossible to comply with both state and federal requirements; or (2) state law is an obstacle to accomplishing the law's goals and objectives. 45 C.F.R. § 160.202. On the other hand, HIPAA does not preempt a state law that is "more stringent" than the requirements under HIPAA. 45 C.F.R. § 160.203(b). A state law is more stringent than HIPAA if the state law increases the privacy protections afforded, provides the patient access to more information than HIPAA requires, increases an individual's right to access or amend health information, or restricts the use or disclosure of information that HIPAA would otherwise permit. 45 C.F.R. § 160.202.

### Preemption

Michigan courts have held that HIPAA does not preempt state law because it is possible to comply with both state law and HIPAA, and state law does not undermine HIPAA's objectives. *Holman*, 486 Mich. at 441, 785 N.W.2d at 105; *see also Isidore Steiner, DPM, PC v. Bonanni*, 292 Mich. App. 265, 274, 807 N.W.2d 902, 908 (2011) (holding that HIPAA does not preempt Michigan law because Michigan law is more stringent than HIPAA in prohibiting disclosure of private medical information). That is plainly incorrect. "Unlike Michigan law, HIPAA does not allow for automatic

waiver of the physician-patient privilege upon the filing of a lawsuit, therefore Michigan law is not

'more stringent,' and is superceded by HIPAA." *Congress v. Tillman*, No. 09-10419, 2009 WL

1738511, at *1 (E.D. Mich. June 16, 2009) (citing *Law v. Zuckerman,* 307 F. Supp. 2d 705, 711 (D.

Md. 2004)); *see also Soto v. ABX Air, Inc.*, No. 07-11035, 2010 WL 4539454, at *1 (E.D. Mich.

Nov. 3, 2010) ("HIPAA supersedes Michigan law to the extent its protections are more stringent

than those provided by state law."); *Palazzolo v. Mann*, No. 09-10043, 2009 WL 728527, at *2 (E.D.

Mich. Mar. 19, 2009) ("Clearly, HIPAA supercedes Michigan law to the extent that its protections

and requirements are more stringent than those provided by state law.").  Moreover, unlike Michigan

law, HIPPA does not permit unfettered access to a patient's medical providers to conduct *ex parte*

interviews just because a lawsuit has been filed.

### *Disclosures permitted under HIPAA*

Nonetheless, HIPAA and its implementing regulations include a number of exceptions to the

rule prohibiting disclosure of protected health information without the patient's consent.  45 C.F.R.

§ 164.512.  One of those exceptions relates to the disclosure of information for purposes of judicial

and administrative proceedings.   The regulation states:

> A covered entity may disclose protected health information in the course of any
> judicial or administrative proceeding:
>> (i) In response to an order of a court or administrative tribunal, provided that
>> the covered entity discloses only the protected health information expressly
>> authorized by such order; or
>> (ii) In response to a subpoena, discovery request, or other lawful process, that
>> is not accompanied by an order of a court or administrative tribunal, if:
>>> (A) The covered entity receives satisfactory assurance, as described
>>> in paragraph (e)(1)(iii) of this section, from the party seeking the
>>> information that reasonable efforts have been made by such party to
>>> ensure that the individual who is the subject of the protected health
>>> information that has been requested has been given notice of the
>>> request; or

> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section. . . .

45 C.F.R. § 164.512(e)(1).  HIPAA, therefore, permits a physician to disclose protected health information to comply with a court order, subpoena, discovery request, or other lawful process.  But a physician may disclose protected health information in response to a subpoena, discovery request, or other lawful process only if (1) the patient has been given notice of the request for information; or (2) the physician receives "satisfactory assurance" from the party seeking the information that reasonable efforts have been made to secure a qualified protective order.  The point of requiring notice, presumably, is to give the patient an opportunity to challenge the subpoena or other request for information.  The requirement of a qualified protective order likewise contemplates an adversarial opportunity.  The regulations plainly contemplate that disclosure of protected information will be subject to judicial supervision.

### Ex parte interviews

As other courts have observed, HIPAA neither prohibits nor permits defendants to conduct *ex parte* interviews with physicians.  *Bayne v. Provost*, 359 F. Supp. 2d 234, 240 (N.D.N.Y. 2005) ("Absent within the four corners of the relevant rules and regulations and the enabling statute is any mention of an *ex parte interview* of a health provider."); *Croskey v. BMW of N. Am.*, No. 02-73747, 2005 WL 4704767, at *4 (E.D. Mich. Nov. 10, 2005) ("The problem with [HIPAA] is that it does not explicitly mention *ex parte* interviews.").  However, that has not prevented courts from issuing qualified protective orders that allow such interviews, as long as measures are put in place to allow judicial supervision adequate to ensure that HIPAA's goals are achieved.  *Croskey*, 2005 WL

-5-

4704767, at *2; *Congress*, 2009 WL 1738511, at *2 (holding that "defendants may conduct an ex parte oral interview with [plaintiff's] physician if a qualified protective order, consistent with 45 C.F.R. 164.512(e)(1), is first put in place.") (quoting *Holman,* 281 Mich. App. at 513, 761 N.W.2d at 395); *Palazzolo*, 2009 WL 728527, at *1 ("The issue presented is whether a protective order, consistent with HIPPA [sic] may contain a provision that allows for defendants' counsel to conduct *ex parte* interviews with plaintiff's treating physicians. The answer is yes."). The HIPAA regulations plainly permit adversaries in litigation to have access to a claimant's medical *records* that are relevant to the issues in the litigation. Having access to the medical *witnesses* who may testify at trial serves the same goal of allowing equal access to the evidence, which is essential to the success of the adversary process. *See Dennis v. United States*, 384 U.S. 855, 873 (1966) (observing that "[i]n our adversary system . . ., it is rarely justifiable for [one side] to have exclusive access to a storehouse of relevant fact"); *see also McCormick v. Brzezinski*, No. 08-10075, 2008 WL 4965343, at *3 (E.D. Mich. Nov. 18, 2008) ("[G]iven that Plaintiff has put her medical condition at issue in this litigation, Defendants are entitled to discovery regarding Plaintiff's medical condition in order to properly defend this matter.").

Of course, qualified protective orders for *ex parte* interviews do not issue automatically, and HIPAA does not require a court to issue them. "If a plaintiff shows a specific reason for restricting access to her or his treating physicians, such as sensitive medical history irrelevant to the lawsuit, a court may restrict ex parte interviews and disclosure of medical records." *Pratt v. Petelin*, 09-2252- CM-GLR, 2010 WL 446474, at *7 (D. Kan. Feb. 4, 2010). That discretion is consistent with the Federal Rules of Civil Procedure, which grant trial courts broad authority to regulate discovery. *See Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991) (holding that the "desire to

allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant"). Exercising that discretion, some courts have responded to requests for qualified protective orders by denying or restricting *ex parte* interviews. *See, e.g., In re Zimmer NexGen Knee Implant Products Liab. Litig.*, 890 F. Supp. 2d 896, 911-12 (N.D. Ill. 2012) (limiting the number of *ex parte* interviews in multidistrict litigation to 25 of the 549 treating physicians as prospective expert witnesses); *Brown v. Providence Med. Ctr.*, No. 8:10CV230, 2011 WL 2259746 (D. Neb. June 6, 2011) (requiring the defendants to submit a revised order limiting the scope of the protective order to the two-month period prior to the plaintiff's daughter's death); *Parker v. Upsher-Smith Labs., Inc.*, No. 3:06-CV-0518, 2009 WL 418596, **3-4, 9 (D. Nev. Feb. 18, 2009) (requiring the defendant's and plaintiff's counsel to meet and confer regarding the scope of *ex parte* interviews and issuing sanctions because plaintiff's counsel contacted the decedent's treating physicians before doing so); *Harhara v. Norville*, No. 07-12650, 2007 WL 2713847, at *3 (E.D. Mich. Sept. 18, 2007) (denying a protective order covering one of the two plaintiffs because her claim was limited to loss of consortium, there was no evidence that the plaintiff received treatment for loss of consortium, and the plaintiff's medical records would not provide relevant evidence to evaluate her claim); *In re Vioxx Products Liab. Litig.*, 230 F.R.D. 470, 473 (E.D. La. 2005) (prohibiting plaintiff and defense counsel in multidistrict litigation from conducting *ex parte* interviews with the plaintiffs' physicians, expressing concern that *ex parte* interviews would improperly influence the plaintiffs' physicians, and requiring opposing counsel to provide notice and an opportunity to participate in any interview).

In the present case, the plaintiff has not offered any reason for restricting access to the medical providers who have treated the plaintiff for injuries he claims were caused by the motor

vehicle accident. There is no indication that the plaintiff's medical records contain sensitive information, treatment for conditions irrelevant to the lawsuit, or privileged information. The defendants certainly are entitled to all the relevant medical records, which they may obtain with a subpoena issued under Federal Rule of Civil Procedure 45(a)(1)(D). That rule requires notice to the plaintiff, consistent with the HIPAA regulations. Fed. R. Civ. P. 45(b)(1). The plaintiff argues that the defendants should be restricted to the formal discovery process if they want to talk to the doctors and nurses. Although that may be appropriate in some cases, the plaintiff offers no "justification for requiring costly depositions . . . without knowing in advance that the testimony will be useful." *Soto*, 2010 WL 4539454, at *3 (internal quotation marks and citation omitted). "[I]nformality in the discovery of information is desired." *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977). Therefore, the defendant also may interview the potential medical witnesses who have treated the plaintiff for his injuries, subject to the limitations of a qualified protective order that the Court issues herein. The Court believes that the absence of circumstances that suggest restricting access, and the usual demands of the adversary process, favor allowing the defendants access to interview the medical providers who may be witnesses in the case or have information about the plaintiff's claimed injuries.

### *Qualified protective orders*

Protective orders permitting *ex parte* interviews generally must meet several requirements. First, the protective order must prohibit the defendants from disclosing the plaintiff's protected information outside the scope of the litigation. 45 C.F.R. §164.512(e)(v)(A); *Croskey*, 2005 WL 4704767, at *2. Second, the protective order must require the defendants to return or destroy the protected information when the litigation concludes. 45 C.F.R. §164.512(e)(v)(B); *Croskey*, 2005

WL 4704767, at *2.  Third, some judges also require the protective order to contain "clear and explicit" notice to the plaintiff's physician about the purpose of the interview and that the physician is not required to speak to defense counsel.  *Croskey*, 2005 WL 4704767, at *5; *see also Palazzolo v. Mann*, 09-10043, 2009 WL 728527, at *4 (E.D. Mich. Mar. 19, 2009) (same); *Harhara v. Norville*, 07-CV-12650, 2007 WL 2713847, at *4 (E.D. Mich. Sept. 18, 2007) (same).  These are all sensible requirements and they advance the goals of HIPAA.

The plaintiff has posed other objections to the defendants' request for a qualified protective order.  The plaintiff says that the defendants should not be able to obtain written communications from the plaintiff's treating physicians.  There is no basis for that restriction.  In fact, one reason the defendants offered in support of their need for a witness interview is to ask for an interpretation of illegible chart notations.  A written translation serves the laudable purpose of conveying accurate information for the fact finder.  And a normal component of informal discovery is the attempt to obtain a written statement from the witness, which can serve a multitude of purposes later at trial.  "Witness interviews, conducted in private, are routine components of nearly every attorney's case preparation."  *In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL 2325, 2013 WL 2318836, at *2 (S.D. W. Va. May 22, 2013).  "Unless impeded by privilege an adversary may inquire, in advance of trial, by any lawful manner to learn what any witness knows."  *Doe v. Eli Lilly & Co., Inc.*, 99 F.R.D. 126, 128 (D.D.C. 1983).  The defendants may attempt to obtain written communications from the plaintiff's treating physicians.

Finally, the plaintiff argues that the defendant should not be able to use any information from the interviews for any purpose related to the litigation.  The plaintiff wants the Court to limit the use of information to the "purposes offered by Defendant as justifying the meetings."  HIPAA does not

require such a limitation.  The appropriate limitation is that stated in 45 C.F.R. § 164.512(e)(v), which requires the order to prohibit the defendants from using the protected health information for any purpose outside the litigation.  It does not restrict what the defendants may use, the questions they may ask, or the form in which the defendants may gather information in connection with this lawsuit.

Accordingly, it is **ORDERED** that the defendants' motion for a qualified protective order [dkt. #15] is **GRANTED IN PART**.

It is further **ORDERED** that the defendants may obtain the plaintiff's medical records relevant to the issues in this lawsuit by issuing subpoenas to the appropriate medical providers under Federal Rule of Civil Procedure 45.  The plaintiff must furnish the necessary authorizations to facilitate the production of those records.

It is further **ORDERED** that the attorneys for the defendants may question the plaintiff's health care providers to obtain the personal health information of the plaintiff, Antoinne D. Thomas, relevant to the present lawsuit, only under the terms and conditions of this order, as follows:

A.   Defense counsel may conduct in-person or telephone interviews of medical providers for the purpose of obtaining information about the care, treatment, examination, diagnosis, and prognosis of the plaintiff for injuries, conditions, or diseases that are alleged to have been caused by the defendants' conduct, or otherwise bear on the question of damages in this case;

B.   The defendants, and their attorneys, agents, and employees, are prohibited from disclosing the plaintiff's protected information outside the scope of the litigation;

C.   At the conclusion of this lawsuit, the defendants and their attorneys, agents, and employees, must return the protected information to counsel for the plaintiff for destruction; and

D.   Before questioning, the defendants must provide clear and explicit notice to the plaintiff's medical providers about the purpose of the interview, that they are not

-10-

required to speak to defense counsel, and they may have an attorney of their choosing present at the interview.

It is further **ORDERED** that the plaintiff's medical providers, as covered entities under HIPAA, are authorized and permitted to disclose to the attorneys for the defendants Antoinne D. Thomas' personal health information concerning the care, treatment, examination, diagnosis, and prognosis of the plaintiff for injuries, conditions, or diseases that are alleged to have been caused by the defendants' conduct, or otherwise bears on the question of damages in this case.

                              s/David M. Lawson
                              DAVID M. LAWSON
                              United States District Judge

Dated:  October 28, 2013

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 28, 2013.

                    s/Shawntel Jackson
                    SHAWNTEL JACKSON